## MILLS v. TILGHMAN.

No. 9359—Opinion Filed Aug. 13, 1918.

(174 Pac. 285.)

### Appeal and Error—Reversal—Technical Errors—Statutory Provisions.

Under section 6005, Rev. Laws 1910, no judgment shall be set aside or new trial granted on the ground of misdirection of the jury or the improper admission or rejection of evidence or as to any error in the pleading or procedure, unless in the opinion of the court, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

(Syllabus by Hooker, C.)

Error from District Court, Lincoln County; Chas. B. Wilson, Jr., Judge.

Action by Charles A. Tilghman against

A. L. Mills, receiver for Ft. Smith & Western Railroad Company. From a judgment for plaintiff, on appeal from a judgment of the justice court, defendant brings error. Affirmed.

· H. P. Warner and C. R. Warner, for plaintiff in error.

John J. Davis, for defendant in error.

Opinion by HOOKER, C. The defendant in error instituted this action in the justice court against the plaintiff in error, and in his bill of particulars filed therein alleged that on or about the 26th day of May, 1916, and for many days prior thereto, the plaintiff in error had failed and neglected to keep up and maintain a good and lawful fence and sufficient cattle guards at the highway crossings in the vicinity of the north one-half of the northeast one-quarter of section 8, township 14, range 2, in Lincoln county, Okla., along its line of railroad, and, as a result of said failure of said plaintiff in error to fence and maintain and keep up its right of way and its cattle guards, on said date a cow, the property of plaintiff below, drifted upon the right of way and track of defendant below in the vicinity of the real estate described above and was killed by one of the trains of the defendant below. There were other allegations of negligence in the operation of the train charged against the defendant below; but those questions are not involved here, as the same were eliminated under the rulings of the trial court. An appeal was had from the judgment of the justice court to the district court, and a verdict rendered in favor of the defendant in error and against the plaintiff in error, to reverse which an appeal is had here.

It is charged by the plaintiff in error that the trial court should have sustained a demurrer to the evidence of the plaintiff or should have instructed the jury to return a verdict for the defendant, and that the court committed an error in giving instructions to the jury.

We have carefully read this evidence, and we find therefrom that the fence of the company upon one side of the railroad right of way running through the land in controversy was suffered by the company and its receiver to become in a dilapidated condition, and that the cattle guards upon the west end of the premises and the fence approaching thereto on one side of the right of way was not maintained, and that the fence on one side of the right of way at the cattle guard upon the east side of the premises was in a bad condition, and that the cattle guards on the east of the premises were constructed by planks with beveled edges; and it is claimed by the defendant in error that, on account of the defective condition of the fences and cattle guards, his cow in question got upon the right of way of the company and within the inclosures on account of the defective condition of the fence and cattle guards, and in order to recover therefor he instituted this suit, charging violation of the statutory duty to erect a lawful fence and to maintain proper cattle guards.

The theory of the company was that the cow was struck upon the public highway, and that, inasmuch as negligence was not shown in the operation of the train, no recovery could be had here. The operators of the train testified, when they first saw the cow, it was upon the public crossing, and that they did all in their power to avoid injuring her after they discovered her perilous condition, but she was unavoidably struck and knocked down from the public highway to a place 18 or 20 feet west thereof upon the right of way, and they specifically denied that the cow was upon the right of way of the company within the inclosure, where, under the statute, it was the duty of the company to fence.

There is some evidence introduced by the plaintiff below to controvert this theory of the defense. The evidence is as follows:

Jim Ganter on his cross-examination:

"Q. The only thing you know is that the cow was found knocked down west of the north and south highway and south track? A. Yes, sir. Q. How far was she from that north and south highway to the west? A. How far? South? Q. No, how far west was she from that north and south roadway? A. Oh, I don't—I wouldn't be positive, she was like the train had carried her a pretty good ways where it drug her along the end of the ties. Q. Signs there where she had been dragged on the ties? A. Yes, sir. The Court: Jim, where did you see the first signs? A. Why, right there at the right of way, just as you got across the guard. Q. Just immediately inside the right of way guards, the guards west? A. On the south side. Q. But west of the guards? A. West of the guard. Here is the guard here— The Court: Was it in the public highway? A. No, sir; on the railroad. Q. On the railroad right of way west of the public highway? A. Yes, sir. Q. You didn't see the animal struck? A. No, sir."

Also, the witness Hagar testified:

"Q. Who was with you at the time? What did you do about tracking it? A. Well, from where the cow lay, * * -* and went up where the cow was and looked and seen

it was dragged over the ends of the ties, and seen where the engine dragged her and followed the tracks back over the railroad track, and last I remember seeing some four or five feet from the guards. Q. Just inside the guards? A. Just inside the right of way. The Court: What place you say? A. Just four or five feet inside the right of way. Q. Was that at any point where any fence crossed the right of way. A. Yes, sir; that is where the guards, the two by four scantlings, were put across the right of way and the way I stepped it must be 18 feet from where the engine hit her."

The trial court in his instructions told the jury that it was its duty to determine, if it found that the cow was struck on the defendant's right of way and not in the public highway, whether or not the cow that was killed crossed from the public highway onto the railroad right of way adjacent to the east highway across the cattle guards attempted to be maintained by the company, and further to determine whether or not, if it did so cross said cattle guard, that the cattle guard was one which was reasonably sufficient to prevent the crossing of cattle or was one which should, under all reasonable circumstances, have prevented cattle from crossing at the point where the railroad track leaves the railroad right of way and enters the public highway. Or, in other words, the court limited the plaintiff's right to recover by telling the jury that it must find from the evidence that the cow in question got upon the company's right of way over the cattle guard, and that the cattle guard was defectively constructed and insufficiently maintained. The company now asserts that the evidence here is not sufficient to support the verdict of the jury adverse to it.

The negligence of the company in failing to erect and maintain a lawful fence is established, and the damage to plaintiff below approximately due thereto is shown here. Therefore, under section 6005, Revised Laws 1910, this cause should be affirmed.

By the Court: It is so ordered.